UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| DOUG RAY FORD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 5:17-cv-00392-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

Plaintiff Doug Ray Ford seeks judicial review of an administrative decision of the
Commissioner of Social Security, which denied Hardin's claims for supplemental security
income benefits and disability insurance benefits.  Mr. Ford brings this action pursuant to 42
U.S.C. § 405(g), alleging various errors on the part of the ALJ considering the matter.  The
Court, having reviewed the record and for the reasons set forth herein, will DENY Mr. Ford's
motion for summary judgment but will GRANT judgment in favor of the Commissioner.

**I**

**A**

Plaintiff Doug Ray Ford filed an application for disability insurance benefits on
November 20, 2014 alleging disability beginning November 6, 2014 due to diabetes.  [Tr. 19.]
Mr. Ford's motion for summary judgment explains that he suffers from "acute diabetic
emergencies that result in his passing out suddenly," despite being "generally compliant with his
diabetic regimen." [R. 13-2 at 3.]  These episodes occur approximately twice a week.  *Id.*
Additionally, Mr. Ford experiences "pain, fatigue, tingling, and numbness which interfere[s]

with his concentration." *Id.* Mr. Ford's application was denied initially and upon reconsideration. [Tr. 19, 78–81, 179.] Mr. Ford requested a hearing, which was held before Administrative Law Judge (ALJ) Bonnie Kittinger on October 14, 2016. [Tr. 34.] Following the hearing, ALJ Bonnie Kittinger issued a final decision denying both of Hardin's claims for benefits. [Tr. 15–27.]

To evaluate a claim for disability insurance benefit claims, an ALJ conducts a five-step analysis. *See* 20 C.F.R. § 404.1520. First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." 20 C.F.R. § 404.1520(d). Before moving on to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity ("RFC"), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

Fourth, the ALJ must determine whether the clamant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is "disabled." 20 C.F.R. § 404.1520(f).

2

Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving his lack of residual functional capacity. *Id.*; *Jordon v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

ALJ Kittinger's written decision proceeds sequentially through the five steps. [Tr. 22.] As an initial matter, the ALJ found that Mr. Ford met the insured status requirements of the Social Security Act through December 31, 2018. *Id.* At the first step, ALJ Kittinger found that Mr. Ford had not engaged in substantial gainful activity since November 6, 2014, the alleged onset date. *Id.* Although Mr. Ford did "small jobs for friends" which reportedly consisted of five, eight-hour work days, the work was not documented, and the ALJ found that it did not rise to the level of substantial gainful activity.

Next, at the second step, the ALJ found that Mr. Ford's diabetes mellitus with hypoglycemic unawareness amounted to a severe impairment. *Id.*; *see* 20 C.F.R. § 404.1520(c). ALJ considered Mr. Ford's diagnoses of hypertension, hyperthyroidism, hyperlipidemia, and cataracts, but found that those ailments did not "impose any significant work-related limitations of function," and could not be considered "severe." [Tr. 22.] ALJ Kittinger also considered Mr. Ford's depression by evaluating the four broad functional areas set out in the disability regulations. She found that Mr. Ford had no limitations in daily living activities or social functioning, no episodes of decompensation of extended duration, and only mild limitation in concentration, persistence or pace, and noted that Mr. Ford has not alleged mental impairment as

the basis of his disability claim. *Id.* The ALJ also credited the diagnosis of Dr. Harold Pretorius, noting, "Harold Pretorius, MD, who is both a medical doctor and a psychologist, diagnosed depression; however, treatment records do not show he has recommended mental health treatment." *Id.* Finding only mild limitation in concentration, the ALJ found that Mr. Ford's mental impairment of depression was non-severe. *Id.*

At step three, ALJ Kittinger found that Mr. Ford had the residual functional capacity to perform medium work, except that he should not climb ladders, ropes or scaffolds, and should avoid dangerous machinery. [Tr. 23.] In making this assessment, the ALJ found that Mr. Ford's impairments could reasonably be expected to cause the issues he described, such as fluctuations in blood sugar and passing out. However, she did not completely credit Mr. Ford's testimony concerning the intensity and limiting affects of Mr. Ford's symptoms. Nor did she credit Dr. Pretorius's opinions. While ALJ Kittinger recognized that "Dr. Pretorius has treated the claimant for diabetes for more than five years," she also found his medical opinions to be "internally inconsistent," and therefore afforded them only slight weight. [Tr. 24.]

Ultimately, the ALJ found that Mr. Ford was unable to perform any past relevant work. [Tr. 25.] ALJ Kittinger credited the testimony of vocational expert Ms. Goss, who testified that somebody with Mr. Ford's characteristics could find work in the national market as a representative, doing assembly or bench work, or as a sorter or packer. [Tr. 56.] Considering the record before her, ALJ Kittinger found that Mr. Ford has not been under a disability, as defined in the Social Security Act, from November 6, 2014 through the date of the decision. [Tr. 26.] This appeal followed.

## II

### A

The Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B**

Mr. Ford argues that the ALJ erred by failing to evaluate the opinion of Dr. Pretorius, Mr. Ford's treating physician, in accordance with Agency Policy and Sixth Circuit Precedent. [R. 13-2 at 2.] Instead, he argues, she "formulated an RFC based only on her law opinion." *Id.*

First, the ALJ did not err when she decided to assign partial weight to the opinion of Dr. Pretorius, Ford's treating physician and endocrinologist. The Social Security Administration has set forth certain guidelines that an ALJ must follow when determining how much weight to assign a treating medical source. The regulations provide:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(c)(2). Other factors which must be considered when the treating source opinion is not given controlling weight include the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with other evidence in the record, and whether the treating source is a specialist. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(c)(5); 416.927(c)(2)(i)-(ii), (c)(3)-(c)(5).

The regulations also contain a clear procedural requirement that an ALJ must give "good reasons" for discounting a treating physician's opinion, specific enough "to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." 20 C.F.R. §§ 1527(c)(2), 416.927(c)(2); Social Security Ruling

("SSR") 96-2, 1996 WL 374188, at *5 (July 2, 1996).  The purpose of the reason-giving

requirement is to allow "claimants [to] understand the disposition of their cases, particularly

where a claimant knows that his physician has deemed him disabled and therefore might be

bewildered when told by an administrative bureaucracy that she is not, unless some reason for

the agency's decision is supplied."  *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (citation

and internal quotation marks omitted).  In addition, the requirement "ensures that the ALJ applies

the treating physician rule and permits meaningful appellate review of the ALJ's application of

the rule."  *Id.*  Failure to follow the procedural requirement denotes a lack of substantial

evidence, even where the ALJ's conclusion may otherwise be justified on the record.  *Id.* at 546.

The ALJ's written opinion explains she assigned only slight weight to two and partial

weight to one of Dr. Pretorius's opinions.  [Tr. 24.]  Dr. Pretorius's opinions dated June 10, 2015

and October 10, 2015 were given slight weight because they were "not consistent with or

supported by his treatment records."  *Id.*  As the Commissioner pointed out in her motion for

summary judgment, "whereas Dr. Pretorius opined that Plaintiff could only stand and/or walk for

less than 2 hours and sit for less than 2 hours in an 8-hour workday, Dr. Pretorius's physical

examinations did not reveal any abnormal objective findings that would support such extreme

limitations."  The ALJ afforded partial weight to Dr. Pretorius's because she found it internally

inconsistent: "it supports lifting 50 pounds and twisting, stooping, crouching and climbing up to

two-thirds of an eight-hour day, while stating he can stand/walk les than two hours per day."  *Id.*

The opinions of treating physicians are only given substantial deference "when supported

by objective medical evidence."  *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir.

2004).  The fact that Dr. Pretorius's opinions were not supported with treatment records and

were internally inconsistent, then, is a good reason for assigning the opinion only partial weight

under the relevant regulations. *See* 20 C.F.R. § 404.1527(c)(3) (explaining the importance of supportability and noting that "[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion"). Furthermore, the Court notes that the ALJ appropriately gave at least some consideration to Dr. Pretorius's opinion despite its shortcomings. *See* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4 (July 2, 1996); *Fisk*, 253 F. App'x at 585.

## C

Mr. Ford also contends that the ALJ erred in failing to have a qualified psychologist or psychiatrist review the medical evidence related to Mr. Ford's mental impairments, despite the ALJ's finding that Mr. Ford suffered from depression. In support of his position, Mr. Ford cites § 421(h) of the Social Security Act, which states in relevant part:

> An initial determination under subsection (a), (c), (g), or (i) shall not be made until the Commissioner of Social Security has made every reasonable effort to ensure—
> (1)     In any case where there is evidence which indicates the existence of a mental impairment, that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment[.]

42 U.S.C. § 421(h)(1). A fair reading of the statute reveals that § 421(h) does not apply to the ALJ's decision. Rather, §421(h) applies specifically to initial determinations made under subsections (a), (c), (g), or (i), none of which refer to administrative review by an ALJ. *Id.* The Sixth Circuit has found the same. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

Additionally, Mr. Ford did not seek disability insurance benefits due to mental impairment, but diabetes. Mr. Ford did not mention depression in his disability paperwork and did not testify about any depression at the ALJ hearing. [Tr. 179, 191–193; Tr. 38–54.] While Dr. Pretorius did diagnose Mr. Ford with depression at some point, there is no evidence that Mr.

Ford was ever prescribed medication for his depression or even advised to seek mental health treatment. [Tr. 250–88.] An ALJ is only required to seek review of a Plaintiff's medical records by a psychiatrist or psychologist where "the claimant brings forth sufficient evidence to raise an inference that he suffers from a mental impairment." *See Marcum v. Commissioner*, 2000 U.S. App. LEXIS 787, *11–*12 (6th Cir. Jan. 18, 2000) (finding a single mention of depression by treating physician not "sufficient evidence" to require review by psychiatrist). Here, there is a dearth of evidence in the record that Mr. Ford had depression that limited his ability to work. The ALJ was not required to seek the opinion of a qualified psychiatrist or psychologist.

### III

Importantly, the Court must uphold the ALJ's decision even if the Court would weigh the evidence differently, and even if substantial evidence also supports Mr. Ford's arguments. *See Ulman*, 693 F.3d at 714; *McMahon*, 499 F.3d at 509. While substantial evidence may, therefore, support some of Mr. Ford's positions, he has not demonstrated that the ALJ's decision was not also supported by substantial evidence or that the ALJ failed to follow applicable procedural rules. For the reasons discussed above, the Court denies the motion for summary judgment filed by Mr. Ford but grants summary judgment in favor of the Commissioner.

Being otherwise sufficiently advised, the Court hereby **ORDERS** as follows:

1. The Plaintiff's Motion for Summary Judgment [R. 13] is **DENIED**;

2. The Commissioner's Motion for Summary Judgment [R. 15] is **GRANTED**; and

3. Judgment in favor of the Commissioner shall enter promptly.

This the 5th day of March, 2019.

Gregory F. Van Tatenhove
United States District Judge